Good morning, Your Honors. May it please the Court, my name is Dana Suntag and I represent the defendants and appellants, the three City of Stockton police officers and the City of Stockton. I've got a lot to cover but I'd like to reserve two minutes for rebuttal. I will start with Patrick Mayer, the officer who first approached Mr. Smith, the plaintiff and respondent in this case, and pointed the gun at him. The undisputed facts combined with plaintiff's version of the facts show that Officer Mayer did not violate clearly established law. The high-level rule, which the district court correctly cited, is that an officer can point a gun at a suspect when he reasonably perceives a safety risk. Here, Officer Mayer reasonably perceived the safety risk. The undisputed facts are that Officer Mayer knew plaintiff was wanted on a felony warrant and Officer Mayer could see that plaintiff was a around in the back of the car while Officer Mayer was pulling him over and looking back at Officer Mayer's car, all of which aroused Officer Mayer's suspicion, and plaintiff then swung his door open and exited the car. This all happened before Officer Mayer drew his gun. So when Mayor pulled up and exited his vehicle, what was the position of Mr. Smith? I think Mr. Smith exited slightly before Mr. Mayer exited. What do you mean by slightly? Well, I don't think the record is clear about that. I think it's a matter of seconds, probably under five seconds, but I don't think there's clear evidence. Did the officer order him to get back in the car? No, he did not. No evidence of that. He approaches the car and Smith is either out of the car or exiting the When Officer Mayer saw these things, he testified that all of these things were, in his words, quote, unusual, especially when Mr. Smith swung the door open. Officer Mayer's concerns, as he testified, became, quote, heightened, end quote. He testified, quote, I don't know what he's going to do. I don't know if he's going to stand there and just challenge me or whatever else. And so Officer Mayer drew and pointed his gun in response to those things. And there's an additional... So did Smith, would they have a face-to-face sort of stare down? I think that's accurate, Your Honor. I think they did. And the additional... With the gun pointed at him? Correct. Correct, Your Honor. And the additional key undisputed fact is that Smith was unsearched and there's no dispute about that. Were Smith's hands and arms showing? I think the record is not clear, but we're not going to contest he was hiding his hands because there's no evidence of that. But he was also standing next to a car. He could have had a gun or a knife or whatever else in his pockets, in his waistband, in the car. How far was he standing away from the car? Two. The record isn't clear, Your Honor. Very close to the car. He had just gotten out. Officer Mayer was about two car lanes back from Mr. Smith. And Mr. Smith's girlfriend was in the front seat of the car, could have had all sorts of weapons as well. So neither the district court nor a plaintiff cited a case making it illegal for Officer Mayer to draw and point his gun... But is there any evidence in the record that the woman in the front seat of the car was doing anything strange? No, there isn't. But... There was a child in the back seat as well. Is that correct? Correct, Your Honor. And there's no evidence Officer Mayer knew who was in the back seat, whether it was a child or anything else. He saw somebody driving a car. He knew somebody else was in the back seat. He saw these, what we've described as furtive movements in the car, and it raised his suspicion. There's no case. We haven't seen a case. The district court didn't cite one. And plaintiff didn't cite one that says it's clearly established that you cannot point a gun in those circumstances. And it's plaintiff's burden, not our burden. It's plaintiff's burden, and the plaintiff did not meet it. And the district court didn't find that any of the facts I just listed are... Well, so wait a minute. Wait. So there's two steps in this analysis, correct? Yes, Your Honor. Right. The first question is whether or not taking the facts in light most favorable to Mr. Smith, because he's a non-moving party and you're the ones who are seeking qualified immunity. So the first inquiry is whether a reasonable fact finder or jury could find a constitutional violation on these facts taken in the light most favorable to Mr. Smith, correct? Correct, Your Honor. So is it your argument that no reasonable jury as a No, Your Honor. Our argument... Well, that's not your argument, then. Our argument is that... Your argument is that there's no clearly established law. The second step. Yes, Your Honor. At the Ninth Circuit, Your Honor, we agree... Okay. Well, the Ninth Circuit has several cases that say that pointing a gun at somebody can't be... You know, it's well established that it can be excessive. Absolutely. Absolutely, Your Honor. Robinson, Espinoza... Techley and Cameron. All the four cases the district court cited, but none of them are even close to this situation, Your Honor. None of them are even close, and the Supreme Court has tightened this up so much lately, as the Court knows. They still haven't said you need a case on all fours. You do not need to be on all fours, but it must... And that's what Judge Mueller went through a very careful analysis, and she was very cognizant of the need to look for cases that, you know, that are in the general framework, and she says that very clearly. She cites the Supreme Court case law. Your Honor, general framework doesn't do it. Well, I mean, you know, they don't... And that's what Judge Mueller... Within the context here of, you know, the... Like, Espinoza is a really good example. But Espinoza was a way different fact, where an individual was in an attic, not accused of any crime. They didn't know... They had no idea why he was in the attic, and multiple officers go in there, and they point a gun at him. I point a gun at him, and he's in a blank range, and they shoot and kill him. And there was no... Well, that gets to the whole... Whether, in fact, he was harmed goes to the question of damages. I mean, you may not have much in the way of damages here. That's... You don't need, under 1983, you can get the harm for emotional distress. I understand, Your Honor. My only point is that the facts were nowhere close to the facts of this case. But the Supreme Court says the cases have to make it, quote, beyond debate, end quote. So the case has to squarely govern, and nothing in Espinoza makes this beyond debate. Nothing in Espinoza makes this squarely... What about Robinson? Robinson is even further away, Your Honor. Robinson, the court... First of all, the court granted... The United Circuit granted qualified immunity. Well, that's because at that time, there wasn't any law on the issue. Correct, Your Honor. Now we have Robinson, and Robinson was in... on the books. Your Honor, that's correct. And in Robinson, it was clear the suspect was not armed. The court makes a point that he was not armed. And it was clear that he was in the open with the... But the police knew that he approached... The reason why the police had been contacted in that case is because he had gone out and, you know, Mr. Robinson had gone out and shot... I understand. And when the police... Had a shotgun and shot a dog who had killed the neighbor's animals. I understand, Your Honor. And Your Honor was on the panel that decided the case. Yes. I remember it well. And when Mr. Pei and when the police officers arrived, Mr. Robinson voluntarily exited his house, came up to the officers and said, hi, I'm the one that shot the dog. And Mr. Robinson makes it clear that there was no indication he was armed, no indication whatsoever, yet the officers trained their gun right at his head. And that's nowhere... nowhere near... Well, when Mr. Smith got out of the car, was he armed? We don't know, but it was a... Well, were his hands visible? His hands were visible, but not... well, his pockets weren't visible, Your Honor. And what was in the car was invisible. And it's reasonable to believe, at least it's possible he would have a gun, as opposed to Robinson, who the Ninth Circuit found that the officers knew he did not have a gun. So not even close, Your Honor. And the other cases, Techley and Cameron, are not even close to this situation. The one case that is somewhat close, Your Honor, is the Ninth Circuit case of Thompson v. Rahr, case from 2018, which was a traffic stop case. And in that case, the Ninth Circuit specifically cautioned lower courts that they have to treat traffic stop cases specially. And the Supreme Court said that in Arizona v. Johnson in 2009, as the Thompson court discussed. And those two cases say that courts must give officers more leeway with traffic stops because traffic stops are, quote, especially fraught with danger to police officers, end quote, quote. And those cases recognize the need to use force in a traffic stop to manage what Thompson said was a, quote, potentially, not actually, but a, quote, potentially volatile automotive arrest situation. So you don't have to wait for it to be actually volatile. You're authorized within reason to take appropriate steps to prevent it and control it from the outset. So the finding of qualified immunity in Thompson five years after the Smith incident really compels the finding of qualified immunity in this case. The Thompson court held the officer was entitled to qualified immunity even though he pointed his gun at Thompson's head at nearly point-blank range and threatened to kill him despite the fact the suspect was surged and had no weapons and was sitting quietly on the police car. By contrast, Smith wasn't surged and could have had all sorts of weapons in his pockets or in the car. I think you answered this to a question Judge Pai has asked earlier. But just to clarify, on the pointing the gun and the use of the dog, am I understanding correctly that your argument is based only on lack of clearly established law as you see it and not on the idea that there was no violation? Yes, Your Honor. Yes, Your Honor. And the reason for that, Your Honor, is that there were issues of fact on the first issue, and this is an appeal and we understand that. With respect to the pointing of the gun, I'm going to leave the court with a quote from Sauci versus Katz, which of course is the seminal case, which is that officers are entitled to qualified immunity where the situation is in the, quote, hazy border between excessive force and reasonable force, end quote. Here the situation isn't a hazy one. It really isn't. But even if it were, officers... Why don't you address the shooting? I'd be happy to, Your Honor. So Officer Perez approaches the car, and what he sees when he approaches the car is that Mr. Smith is fighting with the occupants. Officer Harrison approaches first, and she holsters a gun because she doesn't see fighting at first. But then they start fighting. So she unholsters her gun. Officer Perez unholsters his gun. It's a very... I mean, I don't think anybody can dispute. It's a very tense situation. Officer Perez testified that carjackings are no joke. Carjackings are serious situations, and they're often done at gunpoint. And the district court just... But at the time that they shot, isn't Smith's version of the events that he was doing a Superman pose, so both his hands were out and you would have been able to see that he had no weapon? Correct. That is his version. It's exactly what he testified to. You don't have to take his version as... We accept his version, Your Honors. We accept the fact that he said, I don't have a gun. So what is the imminent risk if he's like this and they can see that he has no gun? The imminent risk is that he's in a car with the engine running, where he could start, where he can put the car into gear. And actually, there's evidence in the record from Mr. Contreras that he actually put the car into gear. And if he drives that car lying down in a Superman pose, he's going to hit somebody. So that's one risk. The other risk is that he's fighting with these people. Now, he may have gone Superman pose for a second, but he's fighting with people in the car. But the people were out of the car by that point. Didn't the people exit the car? I don't think it's clear, Your Honors. And if they exited the car, they were within inches of the car. And if Mr. Smith had a gun or knife, even in the Superman pose, it's not difficult for him to grab the gun or grab the knife. And then you've got people who were dead. And Officer Perez wasn't going to take that chance in a highly volatile situation like that. And in a carjacking situation, I think you've got to give a little discretion to the officer to do what he thinks is appropriate. And so he's shot. And there's no clearly established law. There's no case even close to that. And the district judge didn't even try to find a case close to that. She relied on Diorly saying it's beyond dispute that this could be illegal. But there's no analysis from her on that. So Officer Perez is entitled to qualified immunity. Officer Harrison, the evidence is she ran to the front of the car to take cover and she shot as well. But don't we need to have the version of events that she can see his hands out in a Superman pose be the version of events for her too? She could see his hands out in a Superman pose, but she also testified she thought she saw something under him. Yeah, but how would he have shot a gun if his hands are out like this? Well, in a split second, his hands go from that to that. I mean, that could happen. And if you're an officer out on the field and these things can happen and you're dealing with multiple people's lives, not just the two officers, but the three car owners and other people in the area. So I think both Officer Harrison and Officer Perez are entitled to qualified immunity. I haven't seen a case on point that says they're not. Okay. Did you want to save some time for a rebuttal? I'd like to, Your Honor. Okay. Thank you very much.  Good morning, Your Honors. Lori Rifkin on behalf of Plaintiff's Appellee Nathaniel Smith. I think the key point for the court to consider is what just happened in Appellant's argument. Appellant quoted at length each officer's self-serving testimony about what happened in the incident and completely ignored, as Your Honors pointed out, Mr. Smith's testimony, other officers' testimony at the scene, and the findings the district court made as it must, taking all evidence in light of Mr. Smith as a non-movement's position and all reasonable inferences thereof. So Appellant's either quoted each officer's self-serving testimony at length or said, I don't think that it's clear. All of these are sure signs that this case must go to the jury. In their briefing, Appellant's took the position that they did take the position that facts have to be imported to the clearly established law questions in order for Your Honors to consider them, which means this court, as we pointed out in our answering brief, has no jurisdiction. And I want to walk, Your Honors – Pointing of the gun. So they say, we're not really arguing that a reasonable jury on these facts, taking the facts in light most favorable to Mr. Smith, you know, could find a constitutional violation. They say, okay, okay, we accept that, but there's no clearly established law that addresses this particular kind of situation. Yes – Where the person has been stopped because of a warrant, right, a bench warrant. That's what they were looking for, if I remember correctly. Right? In this case, Your Honor, yes. They pull up on where he stops, where the car is, he bolts out of the car, and they know they have – they're trying to get this guy who didn't show up for whatever, it may have been – was it a sentencing or arraignment or something? It was a DUI felony warrant, Your Honor. But was it for sentencing or for – Yes. Yes, it was, though there's no – Or for arraignment? There's no information in the record as to what the officer's view – Oh, okay. We just know that there's a bench warrant out for his arrest. That's correct. All right. So that's what they know. And he gets out of the car quickly, I guess. There's no dispute about that. And then the officer points a gun at him. What – you know, what case is it that would tell an officer, looking at this, in this situation, that the law has clearly established that he shouldn't point the gun? Well, Your Honor, in that recitation of the facts, first of all, that is defendant's version of the facts. That is not the version of the facts taken in the light most favorable to plaintiff. The idea that Mr. Smith had furtive movements, which they incorporate, the idea that he suddenly – But I thought Smith admitted that he kissed his kid or something, that there was some I thought Judge Pius was just asking about. Well, no. A very key point is that defendants characterize this as furtive movements. Officer Harrison, the other officer at that stop – But, okay, let's take a – maybe just set aside the movements. So what case is there that says someone who's sought for a felony warrant can't have a gun, can't have a  gun pointed at them if they're getting out of a car at a stop, when you wouldn't usually expect someone to get out of a car at a stop? There are numerous cases that stand for the idea that just because somebody is suspected of a crime and you're stopping them, you can't immediately point a gun at their head. So Hopkins is an example, a 2009 case from this circuit, that after a traffic accident, officers went to the home of somebody suspected of drunk driving and fleeing that accident, and they entered his home pointing a gun, that you can't do this. Robinson, of course, stands for this proposition that you cannot just point a gun at somebody just because you're stopping them. There was no information that Mr. Smith was likely to be armed or dangerous. Defendants' version of the qualified immunity question imports the assumption that he was that Officer Mayer reasonably believed he was dangerous. There is no evidence to the record. I guess I don't know if that's, I mean, maybe they just thought they needed to point the gun to scare him away from running away, which actually is what happened. But I mean, how do we know that, shooting would be another thing. You can't shoot someone unless they're dangerous and imminently at risk, right, that they're posing an imminent risk. But pointing a gun is a serious use of force, but to capture someone who is trying to escape from a felony situation, how do we know that that's not okay? Well, for example, in Cameron, a 2013 case from the circuit that happened actually after this incident, but in that case, the Ninth Circuit found that it had already been clearly established that you can't point a gun at someone suspected of a nonviolent crime near her children. In this case, Mr. Smith had been in the car with his girlfriend and small child, which Officer Mayer knew because Detective Harrison had radioed it to him. He got out of the car as Officer Harrison testified nonchalantly. So Techley further amplifies Robinson. I mean, I'm sorry, Cameron further amplifies Robinson, saying that this was clearly established law. Techley as well. Was it a felony in Cameron? I'm trying to look. She was accused of, I think, stealing, misusing a credit card. But this court has also made clear that the distinction between a felony and a misdemeanor, you can't assume violence based on that, and the Supreme Court held that in Tennessee v. Garner, that given criminal law and how it's developed, you cannot assume because of a felony that it's violent, and you cannot assume because of a misdemeanor that it's nonviolent. In fact, the officers had information that Mr. Smith's Nobel warrant was for a DUI, which would indicate nothing about a weapon. Nobody had any information. DUI with injury, though, right? A DUI with injury, but nothing concerning a weapon, nothing concerning he was likely to have a weapon. And a very key fact here is that Officer Harrison saw him leave his house. She did not see a weapon, and one of the things your honors asked about, the facts that your honors asked about when opposing counsel was whether you could see Mr. Smith's hands when he got out of the car. It's actually, this is not disputed at all. Officer Mayer testified that Smith did not seem to be carrying anything when he was getting out of the car. Mayer did not see anything in his hands. That's at ER 262 and 263. Officer Harrison testified when Smith got out of the car he was not holding anything.  There is nothing to establish that he might be dangerous. And Robinson, this Court took Robinson on bonk. It said specifically to establish as a matter of law in this circuit that you cannot point a gun at an unarmed suspect's head. So Robinson clearly indicated this at the time, and there's been a series of cases, as your honors pointed out, since Robinson, that indicate this Court means exactly what it said. And I think Cameron is a really important Robinson does talk about the crime being at most a misdemeanor, though, right? Robinson did discuss that, but again, in Tennessee v. Garner and other cases, the Supreme Court and this Court have made clear that really the distinction is about whether or not you have cause to believe somebody might be dangerous or violent. It's the threat, not the nature of the crime. In fact, there are, and Thompson is an example of this. In Thompson, this Court said that fell at the very boundaries of when an officer might get qualified immunity. In Thompson, the officer, before he pointed the gun at Thompson, saw a loaded revolver in the back seat of the car. They knew he'd been reported with a weapon, and they saw a weapon literally within his reach in the car. And the Ninth Circuit found that was the very outer reaches of qualified immunity. The District Court explained at length why this is different from that case. It was not nighttime. There was no weapon. There was no reason to suspect a weapon. This is broad daylight. There was no command to Mr. Smith to get out of the car. Let me ask you one, just, I don't want to spend a lot of time on this, because I want you to address the shooting, but the dog, the officer releases the dog, was that after he started to run? Before he, you know, what, when did he release the dog? I couldn't really tell. It's hard, it's hard to tell. That's a decision of fact. The jury's going to have to make. What Officer Mayer testified is that he and Mr. Smith getting out of the car, Mayer pulling out his gun, unrolling the window to release his dog, Officer Mayer testified that all of that happened in a, quote, very fluid motion within seconds. And so what we believe, the facts will show, and the jury will find, is that the two exited their cars basically at the same time. And then Mr. Smith testifies and explains he was exiting the car because there was a young child in the car, and he had reason to believe that if anything were going to happen, he didn't want to be near his son. And Officer Mayer himself testifies that basically it was one fluid motion. He gets out of the car, points his gun, unrolls the window to release his dog. So there is no warning. It is undisputed that there is no pre-release warning to Mr. Smith of Officer Mayer saying, warning that he will use the dog, that he will deploy any force. And so Chu could not be more closely on point than this, and Chu has been established for a long time, that you cannot release a dog under these conditions. Again, there's no evidence that Mr. Smith was dangerous at all. Did Mr. Smith testify that the dog was released before he took off? Mr. Smith does not know when the dog was released. He took off, he testifies that he took off because he saw a gun pointed at his head. And so he does not know when the dog was released. There was no verbal warning that the dog was going to be released. He testified that once he saw the gun pointing at his head, he thought he was going to be shot. So he turned around and ran. Would it make a difference if the dog was released after he started to run? No, Your Honor. Well, first of all, this Court wouldn't have jurisdiction to consider that if the facts aren't established for that. But no, Your Honor, it wouldn't. Because the threat level isn't any different. The black letter law, Garner stands for this You cannot use force, and serious force, even if it's not necessarily considered deadly force, it's serious force, you cannot use force against a fleeing, non-dangerous felon. There was no evidence that even if Mr. Smith took off and ran away from a traffic stop, that he was dangerous at all. Okay. Do you want to talk, do you want to address the shooting? Sure. I Well, you don't have to if you don't want to. I would like to address the shooting. I think when you, there really can't be a serious dispute about whether Garner itself, which is actually similar on the facts of this case, prohibits the officer's action under Plaintiff's version of the facts. And Torres, in this circuit in 2011, talks about Garner and also further establishes that. I think it's also important that this Court consider Hagen, which is, well, a Ninth Circuit decision that the Supreme Court overturned on qualified immunity, but not on the constitutional question. That case is very factually similar to this case, where you clearly have established that you cannot shoot somebody who's attempting to surrender. You have no evidence that there's a weapon. And somebody, you, the testimony is that the officers were both yelling at him, put your hands up. Mr. Smith put his hands up, and he was promptly shot. He was prone in the car, is that right? He was prone in the car. Between the back seat and the front seat. That's right. He was laying over the console. There was testimony that Officer Harrison could clearly see that the men had gotten him under control, had locks, so she put her gun away, prepared to go hands on. And there's testimony that Perez came running up, the GOJ report says he was closing in on the car as he fired, yelling put your hands up. And he himself testifies that he saw a plaintiff move his hand, so he shot after he said put your hands up. There is a fundamental precept. Under Mr. Smith's version of the events, were the passengers in the vehicle, the SUV, had they exited the car at the time of the shooting? I'm not sure. Under his version of the events? I'm not sure Mr. Smith testified, but the boys who were in the car, the young men testified that they were still in the car. At the time of the shooting? At the time of the shooting. One said my butt hadn't even gotten out of the seat. Now, Officer Perez testifies he didn't even look, that he didn't know if there was anybody else in the car at the time that he shot into it. He said he didn't look to see if there was anyone in the back seat. He doesn't know if there was anybody in the car before he started shooting at it as he's running towards the car firing. So, your opposing counsel talked today about starting the car or having the car running and so having the risk be movement of the car. I don't really remember that being a focus of their argument before. I thought it was more some risk that there was a gun somewhere. Can you respond to this idea that the car was on and that he could drive the car or something? There is no evidence that the car was on or moving. The evidence, it's undisputed. Officer Perez, who testified Mr. Smith was in another position, still doesn't place him in any position to be able to drive the car. The ignition was not on. There is no evidence. Is there testimony that the ignition was not on? Mr. Smith testifies that the ignition was not on. He testifies he was going for the steering wheel. I think he testified that he might have been trying to turn the ignition on, but there's no testimony that the car was on, that the car was moving, that the car was not able to get away at all. And again, Hagen would say that even if the car were moving, this still isn't allowed. But I think defendants really try to import their own version of the facts into the Fourth Amendment questions here. Today they seem to have given that up, but if you look at how defendants spelled out the qualified immunity questions in their brief, they import where the officer has information indicating the suspect may be dangerous, where there was furtive movements, when there's probable cause to believe the suspect poses a significant threat of death or serious physical injury. They import their own self-serving version of the facts every time they state the qualified immunity question, and that's clearly not allowed. Any other questions, Your Honor? No, I don't. Thank you. Thank you very much. You have a few minutes for rebuttal. Thank you again, Your Honor. First, with respect to the testimony about the car running, I'll tell you where it is. It's page 774 of the record. It's Mr. Contreras' testimony. So it's Mr. Contreras. He was one of the occupants of the car, Your Honor, and he testified the car was running. And it looked like Mr. Smith had his one arm around the steering wheel and the other arm on the gearshift. And he anyway, so that's the testimony in the record. It's undisputed. And he's prone between the seats? Yes, from the front seat to the back seat. He's crooked. I think he's relatively... How could he have one dip? I don't know. He's relatively straight if this is the steering wheel and he's lying like this. I think, but you know, it's not exactly clear in the record. So that's one point I want to make. Second point I want to make about the dog is that it's undisputed that Mr. Smith said something challenging to Officer Mayer. In deposition, Smith said he didn't remember, but the Ninth Circuit is clear that a failure to remember does not create a triable issue of fact. Smith also, Smith also expressly testified that Mayer told him, quote, don't move, end quote. Now what does Smith do? He runs up the hill. Third, when Smith began running, it's undisputed Mayer said stop. Again, Smith said he didn't recall. But finally, it's also undisputed that Officer Harrison said to him, quote, stop or you're going to get dog bit. That's at page 733. Breyer. Did Smith testify in his deposition that he didn't hear that or that he No testimony in his deposition about what Officer Harrison said, Your Honor. This is coming from Officer Harris, Officer Harris. Coming from Officer Harrison, yes, Your Honor. But it's Officer Harris, are you honest? I'm sorry, Your Honor. Smith says he didn't hear anything? No. Smith doesn't respond to the, the, the, Smith doesn't What is Smith saying in his deposition? I'll have to go back and read his deposition. But what is Smith saying in his deposition about what he heard? He doesn't say anything about Officer Harrison. What he says about Officer Mayer is he doesn't recall a conversation between him, but he expressly admits that Officer Mayer said don't move. That's what he testified to. So that's with respect to that. What I'm hearing about the gun, about Officer Mayer pointing the gun at Mr. Smith, is that apparently there's new law that you can point a gun at a suspect only when the suspect has a visible gun, because that's what I heard counsel say, and that's absolutely not the law. And so, and, and so I just want, I just wanted to make that point. The other point about Robinson, Your Honors, that I wanted to make is there was no outstanding felony warrant there. There was at, at most, a possible misdemeanor, but no felony warrant where somebody was already convicted, as is the case with, with Smith. Finally, I haven't really talked about the Minnell claim. If I could just touch up, touch, touch on it briefly. Well, you're over your time now. I'll, I'll do whatever the court would like, Your Honors. Thank you. Thank you, Your Honors. We're going to take a break. Ten minutes. Thank you, counsel. We appreciate your arguments, and the case is submitted at this time.
judges: Paez, Bea, Friedland